UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL D. BENSAL, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-02263-WHO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 28, 30 |

After defaulting on a small business loan and failing to pay any of the principal or interest for over ten years, defendant Michael D. Bensal ("Bensal") sought to avoid his debtors by disclaiming his interest in his father's trust share, which passes under California law to his children. Plaintiff, the United States Small Business Administration ("the SBA"), brings an action under the federal Fair Debt Collection Procedures Act ("FDCPA"), arguing that Bensal's disclaimer constitutes a fraudulent transfer of his property in violation of 28 U.S.C.A. § 3304(a). Defendants claim that as the assignee of a state court judgment, the SBA may not bring an action pursuant to federal law. They also argue that the terms of the FDCPA do not apply in this case, because the default judgment is not a "debt" and because Bensal's disclaimer is not a "transfer." According to defendants, California's law governing disclaimers defeats the SBA's claim.

I find that the default judgment constitutes a "debt" under the FDCPA because it arose from a loan guaranteed by the SBA in accordance with 28 U.S.C.A. 3002(3). In addition, Bensal's disclaimer operates as a transfer. The FDCPA expressly preempts state law, and under *United States v. Drye* Bensal's interest in his father's trust estate was "property" or an "interest in property" that triggered the application of federal law. Therefore, Bensal's disclaimer does not operate to prevent the application of the FDCPA, and is VOID as a result of his debt to the SBA. I GRANT the SBA's motion for summary judgment and DENY the defendants' motion.

**BACKGROUND**

The parties do not dispute any material facts in this case. The debt at issue arose from two loans made in 1999 by First Bank & Trust ("FB&T")[1] to Bensal & Coburn Investments LLC ("BCI"). Stipulation of Facts ¶¶ 1-8 (Dkt. No. 24). BCI was owned by defendant Michael D. Bensal ("Bensal") and John T. Coburn.[2] *Id.* ¶ 1. FB&T's first loan, amounting to $83,556.00, was not guaranteed pursuant to the United States Small Business Administration Program. *Id.* ¶¶ 1-3.

The second loan of $175,000.00 was signed by FB&T and BCI on December 2, 1999. *Id.* ¶ 6; Stipulation of Facts, Ex. H. Before the execution of this loan, FB&T applied for and received a 75 percent guarantee of the second loan from the SBA. Stipulation of Facts ¶¶ 4-5. The guarantee was made in accordance with the Small Business Act, 15 U.S.C.A. §§ 631-657s. *Id.* BCI, and Bensal individually, signed a promissory note acknowledging SBA's role as guarantor as well as a "Borrower's Certification" that recognized the note from SBA to FB&T authorizing the guarantee. *Id.* ¶¶ 8-9. The Borrower's Certification stated that if "[BCI] defaults on Loan, SBA may be required to pay [FB&T] under the SBA guarantee. SBA may then seek recovery of these funds from [BCI]." Stipulation of Facts, Ex. J at 1. Bensal also individually guaranteed the second loan to FB&T using SBA Form 148,[3] attesting that SBA was also a guarantor but not a co-guarantor. Stipulation of Facts, Ex. K at 3. Lastly, Bensal signed a "Commercial Guarantee" which guaranteed the loan to FB&T. Stipulation of Facts, Ex. L.

In 2000, BCI defaulted on both loans, with $73,023.64 owing on the first loan and $100,000.00 owing on the second loan, plus interest. Stipulation of Facts ¶¶ 13, 15. FB&T filed a complaint in the California Superior Court against BCI and Bensal to enforce both loans, the Commercial Guarantee, and Bensal's SBA Form 148 guarantee. *Id.* ¶¶ 13-15. After BCI and Bensal failed to appear, the Superior Court entered a default judgment that totaled $173,023.64 for the principal owed on both loans, plus interest and attorney's fees. *Id.* ¶¶ 16-18. Since that time,

---

[1] The loans were originally made by FB&T's predecessor-in-interest, Millennium Bank. Stipulation of Facts ¶ 1.
[2] Coburn filed for bankruptcy in 2000. Stipulation of Facts ¶ 12.
[3] 13 C.F.R. § 120.160 requires that "[h]olders of at least a 20 percent ownership interest generally must guarantee the loan."

2

1   neither BCI nor Bensal has made any payments on the default judgment. *Id.* ¶ 19.

2   Because BCI and Bensal failed to satisfy the default judgment, FB&T requested that the
3   SBA fulfill its guarantee of the second loan. *Id.* ¶ 20. SBA made monetary adjustments to the
4   amount and paid $54,027.39 to FB&T on June 21, 2005, after the parties agreed that the amount
5   covered by the guarantee would be $70,700.00. *Id.* In October of 2011, FB&T assigned the state
6   court judgment to SBA. *Id.* ¶ 21. The SBA renewed the default judgment under California law in
7   2012. *Id.* ¶ 23.

8   In July of 2011 Bensal's father, Edward D. Bensal, died. *Id.* ¶ 25. He left a trust estate of
9   $400,692.94, of which Bensal was to receive a 40 percent share. *Id.* ¶¶ 25-27. On September 8,
10  2011, the SBA notified the trustee of the estate of the default judgment and sought to enforce the
11  debt against Bensal's trust share. *Id.* ¶ 28. About one month later, on October 21, 2011, Bensal
12  disclaimed his interest in the trust share. *Id.* ¶ 29. Bensal does not dispute that he was insolvent at
13  the time of the disclaimer, and that he paid no consideration for the disclaimer. *Id.* ¶¶ 30-31.

14  Defendant Susan J. Bensal, as the trustee of the Edward D. Bensal estate, acknowledged
15  the receipt of disclaimer. *Id.* ¶ 32. Under California law, the disclaimer to passes the trust share to
16  Bensal's heirs, defendants Michael Edward Bensal and Sophia Bensal. CAL. PROB. CODE § 282.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, courts should grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Disputed facts that are irrelevant or unnecessary will not prevent a court from granting summary judgment. *T.W. Electr. Serv., Inc. v. Pac. Electr. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The FDCPA provides that the government may recover on certain debts for fraudulent transfers. 28 U.S.C.A. § 3304 states that:

> [A] transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if--
> (1)(A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>   (B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation; or

3

>   (2)(A) the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time; and
>   (B) the insider had reasonable cause to believe that the debtor was insolvent.

28 U.S.C.A. § 3304(a) (West 2014).

Courts may invoke the doctrine of judicial estoppel in their discretion to prevent parties from "playing fast and loose with the courts" by taking opposing positions in the same or different proceedings. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal citations and quotations omitted). In determining whether judicial estoppel applies, the court typically considers (i) the extent to which a party's position is "clearly inconsistent" with a prior position, (ii) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and (iii) whether the party asserting an inconsistent position would derive an "unfair advantage" over the opposing party. *Id.* at 750-51 (internal citations and quotations omitted).

Res judicata, or claim preclusion, prevents parties from re-litigating the same claims "whenever there is (i) an identity of claims, (ii) a final judgment on the merits, and (iii) privity between parties." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011). Collateral estoppel, or issue preclusion, relates to the re-litigation of issues. Courts look to whether the issue in the first case (i) is "sufficiently similar and sufficiently material" in the second case, (ii) was actually "litigated" in the first case, and (iii) was necessarily decided. *United States v. Arnett*, 327 F.3d 845, 848 (9th Cir. 2003).

**DISCUSSION**

**A.  The state court judgment does not bar a claim for fraudulent transfer under the FDCPA**

Many of the defendants' arguments focus on the SBA's status as an assignee of the default judgment in state court, and whether the SBA may bring an action under federal law (the FDCPA). Defendants argue that as an assignee of the default judgment, the SBA stands in FB&T's shoes, and is subject to all defenses against it. Def.'s Mot. Summary J. at 4-6 (Dkt. No. 30). They claim that as an assignee, the SBA may not assert any remedies or causes of action that FB&T could not have asserted, including actions under the FDCPA. *Id.* at 6, 11-12. The

defendants also contend that the SBA is precluded from bringing the present claims based upon judicial estoppel, collateral estoppel, and res judicata. *Id.* at 11-15.

All of the defendants' arguments fail for the simple reason that the cause of action brought by the SBA for fraudulent transfer is separate from the underlying causes of action in the default judgment. In fact, the default judgment is only relevant in this case as to whether it constitutes a "debt" under 28 U.S.C.A. § 3304(a). The SBA does not seek to alter, amend, or even enforce the state court's default judgment. Instead, the SBA brings a cause of action for fraudulent transfer as to a debt owed to the United States.[4] *See* Compl. at 5-7 (Dkt. No. 1); 28 U.S.C.A. § 3304(a). FB&T's assignment of the debt subjects the SBA to any defenses Bensal has *to the default judgment*. But the assignment does not prevent the SBA from bringing a separate cause of action, arising after the entry of the default judgment, that is based on a different substantive claim and is brought against different defendants.[5]

Defendants repeatedly assert that the SBA's renewal of the default judgment under California law amounts to a concession that it is bound by state law. Def.'s Mot. Summary J. at 5; Def.'s Oppo. at 4 (Dkt. No. 31); Def.'s Reply at 9 (Dkt. No. 38.). In its capacity as an assignee of the default judgment, the SBA is entitled to preserve any claims that it may have under state law, such as enforcement of the default judgment. *See* CAL. CODE CIV. PROC. §§ 683.020, 683.130(b). Such an action is not a waiver of the SBA's rights to bring a separate claim under federal law.

Likewise, there is no inconsistency between the positions of the SBA and FB&T to justify the application of judicial estoppel. In all relevant agreements and notes relating to the second loan, Bensal, FB&T, and the SBA agreed that California law would apply to controversies between Bensal and FB&T, but that federal law may apply between SBA and Bensal. *See* Stipulation of Facts, Ex. G at 4-5, Ex. I at 4, Ex. J at 1, Ex. K at 2. These documents were all presented to the Superior Court. Stipulation of Facts, Ex. N. In the state proceedings, there was no controversy as to the court's jurisdiction, or as to the applicability of California law to the notes

---

[4] Neither party disputes that the SBA is included in the "United States" under the FDCPA. *See* 28 U.S.C.A. § 3002(15).
[5] Bensal and BCI were defendants in the default judgment action, while Bensal, Susan J. Bensal, Michael Edward Bensal, and Sophia Bensal are defendants in this action.

and loans vis-à-vis FB&T or the SBA. More importantly, the separate cause of action for fraudulent transfer had not yet arisen, so FB&T could not have taken any position on the applicability of state law to the matter before me. Because there is no possible inconsistency in the SBA's position, judicial estoppel is inappropriate. *See, e.g.*, *Holder v. Holder*, 305 F.3d 854, 872 (9th Cir. 2002) (judicial estoppel does not preclude separate claim under different law in different jurisdiction).

Both res judicata and collateral estoppel focus on the similarity or identity of claims and issues. For the reasons outlined above, the issues in this case were not—and could not have been—contested in the Superior Court case. The defendants do not specify which "claims" are precluded by res judicata. *See* Def.'s Mot. Summary J. at 14-15. In the Superior Court, the parties did not litigate the application of California law at all, and the court did not adjudicate that issue. The applicability of state or federal law is at issue for the first time in this action. Again, the elements of the causes of action underlying the default judgment (breach of promissory notes and guarantees) and those of the fraudulent transfer allegation differ entirely. Similarly, the defendants' argument that the underlying causes of action "merged" with the default judgment and are no longer actionable is irrelevant because the SBA does not attempt to re-litigate the claims on the promissory notes and loans. *See* Def.'s Mot. Summary J. at 13-15.[6]

In their briefs and at oral argument, the defendants repeatedly stressed the principle that "the state court judgment is entitled to full faith and credit in this court." Def.'s Reply at 1. This statement is correct, but inapposite. In addressing the merits of this case, I do not disrupt the Superior Court's judgment in any way. *See Mardikian v. Citimortgage, Inc.*, No. 1:14–CV–00407, 2014 WL 3615253, at *8-9 (E.D. Cal. July 21, 2014) (rejecting similar res judicata and "full faith and credit" arguments where the plaintiff sought to enforce, and not to re-litigate, a state court judgment in federal court). Simply put, the mere fact that the SBA's predecessor-in-interest

---

[6] While the SBA argues that Bensal is additionally indebted to it under Bensal's promissory notes recognizing the SBA as guarantor, *see* Pl.'s Oppo. at 14, 19 (Dkt. No. 35), it has not sought to enforce those agreements and primarily argues that the source of the debt is the default judgment. *See* Pl.'s Oppo. at 6; Pl.'s Reply at 1 (Dkt. No. 40). This case can be resolved based upon Bensal's debt under the default judgment alone.

6

1  submitted to the jurisdiction of state courts in one action does not prevent the SBA from bringing a

2  separate action in this court.

3  **B. The default judgment is a "debt" under the FDCPA**

4        The next issue I must address is whether the default judgment is a "debt" within the

5  meaning of the term in 28 U.S.C.A. §§ 3304 and 3002(3).[7] The definition of "debt" as used in the

6  fraudulent transfer statute is:

> (A) an amount that is owing to the United States on account of a direct loan, or loan insured or guaranteed, by the United States; or
> (B) an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other than the United States.

28 U.S.C.A. § 3002(3).

      The defendants first argue that the amount is not "owing to the United States." Def.'s Mot. Summary J. at 17. This reasoning ignores the legal concept of assignment. The SBA was assigned the default judgment, and the defendants are now legally indebted to the SBA for at least $287,642.71. *See* Stipulation of Facts, Ex. Q, Ex. S; 28 U.S.C.A. § 3301(3)-(4).

      Next, defendants assert that subsection (A) does not apply. Def.'s Mot. Summary J. at 16. However, BCI's second loan was guaranteed by the SBA, satisfying the clear language of subsection (A). The use of the word "or" in Section 3002(3) indicates that a debt may be defined under either (A) or (B). Nonetheless, the default judgment satisfies the definition of "debt" in subsection (B) as well, as it creates an amount owed to the SBA "on account of . . . [an]other source of indebtedness to the United States." 28 U.S.C.A. § 3002(3).

      The defendants argue that subsection (B) does not apply because the default judgment falls under the exception excluding debts "owing under the terms of a contract originally entered into by only persons other than the United States." Def.'s Mot. Summary J. at 17. However, this

---

[7] Defendants also focus on the definition of "judgment" in 28 U.S.C.A. § 3002(8). Def.'s Mot. Summary J. at 15-17; Def.'s Oppo. at 6. However, Section 3304(a) does not mention the term "judgment." Instead the question in these motions centers on the definition of "debt."

7

provision does not apply to the second loan. Under the terms of Bensal's "Borrower's Certification," personal guarantee, and promissory note, Bensal acknowledged that the SBA was listed as a guarantor and may have the right to enforce the loan against him if he defaulted. Unlike the case of *Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, 509 F.3d 216 (5th Cir. 2007), which involved private parties acting entirely independently, the SBA has always been involved in the agreement between Bensal and FB&T.

The defendants counter that the first loan was not guaranteed by the SBA and was therefore entered into by "only persons other than the United States." Def.'s Mot. Summary J. at 2-3, 17; Def.'s Reply at 9. This question is more difficult to resolve, as the SBA was not directly involved in the first loan, making it less likely that it is owing "on account of" the SBA's guarantee. However, as the SBA points out, the amount owed to it under the second loan alone far exceeds Bensal's interest in the trust share. *See* Pl.'s Mot. Summary J. at 24 (Dkt. No. 28).[8] The remedy sought here, to prevent the transfer of the trust share and to attach the trust share funds in satisfaction of the default judgment, would clearly be appropriate as applied only toward the portion of the default judgment relating to the second loan. *See* Stipulation of Facts ¶ 17; 28 U.S.C.A. § 3306. Therefore, it is unnecessary to determine whether the entire default judgment constitutes a "debt" under the FDCPA. It is sufficient that pursuant to the second loan, the defendants owe a "debt" that exceeds the amount sought to be disclaimed.

**C. Bensal's trust interest is "property" that he transferred in violation of 28 U.S.C.A. § 3304(a)**

An element of fraudulent transfer under the FDCPA is a "transfer" as to a debt owed. 28 U.S.C.A § 3304(a). This requires me to decide whether California's disclaimer statute applies in this case to prevent Bensal's disclaimer from operating as a "transfer" through the relation back doctrine. Under California law, Bensal's interest in the trust passes to his children, and Bensal is treated as though he predeceased his father, with the disclaimer relating back to the date of his

---

[8] At the time of the default judgment, Bensal owed $140,905.63 on the second loan, including interest and excluding attorney's fees and other costs. *See* Stipulation of Facts ¶ 17. The trust share currently amounts to around $153,944.30. *Id.* ¶ 35. After adding attorney's fees and over ten years of additional interest to the amount owed at the time of the default judgment, the debt under the second loan will easily exceed Bensal's trust share.

father's death. *See* CAL. PROB. CODE §§ 282-83. Bensal asserts that this law applies in the context of the FDCPA and that he consequently did not "transfer" any property. Def.'s Mot. Summary J. at 6-9.

Under the FDCPA, a "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." 28 U.S.C.A § 3301(6). In turn, "asset" is

> [The] property of a debtor, but does not include--
> (A) property to the extent it is encumbered by a valid lien;
> (B) property to the extent it is generally exempt under nonbankruptcy law; or
> (C) an interest in real property held in tenancy by the entirety, or as part of a community estate, to extent such interest is not subject to process by the United States holding a claim against only one tenant or co-owner.

28 U.S.C.A § 3301(2). The FDCPA broadly defines "property" as "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held . . ." 28 U.S.C.A. § 3002(12). Significantly, the FDCPA also explicitly provides that "[t]his chapter shall preempt State law to the extent such law is inconsistent with a provision of this chapter." 28 U.S.C.A. § 3003(d). Defendants have not provided a persuasive argument as to why this provision does not apply and preempt state disclaimer law.[9]

But if the FDCPA does not automatically preempt California's disclaimer statute, *Drye v. United States* nonetheless provides strong support for the SBA's position. In *Drye*, the Court addressed whether the defendant Drye could avoid federal tax liens owed pursuant to 26 U.S.C.A. § 6321 via a state law disclaimer. 528 U.S. 49, 52 (1999). As in this case, Drye disclaimed his interest in an estate left to him after his parent's death. *Id.* A state disclaimer law analogous to California's treated Drye as though he predeceased his parent, preventing creditors from reaching the funds and instead passing the interest to Drye's daughter. *Id.* at 53. The IRS sought to impose a tax lien on the trust share, claiming that Drye had "property" or a "right to property" that

---

[9] Defendants also claim that federal law authorizes disclaimers. Def.'s Mot. Summary J. at 10. However, in doing so defendants cite to the estate and gift tax section of the Internal Revenue Code, which does not apply to the FDCPA. *See* 26 U.S.C.A. § 2518.

9

defeated Drye's disclaimer. *Id.* at 49.

>The Court first discussed the applicable choice of law principles:
>
>The question whether a state-law right constitutes "property" or "rights to property" is a matter of federal law. We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as "property" or "rights to property" within the compass of the federal tax lien legislation.

*Id.* at 58 (internal citations and quotations omitted). The Court emphasized the broad definition of property in the tax lien statute, then asserted that "[i]t is beyond debate . . . that under Arkansas law Drye had, at his mother's death, a valuable, transferable, legally protected right to the property at issue." *Id.* at 56-60. It also noted that disclaimers were not specifically exempt from levy under tax lien law. *Id.* at 56-57. Distinguishing this right from the right to accept or reject a gift, the Court stressed that "the heir inevitably exercises dominion over the property. He determines who will receive the property—himself if he does not disclaim, a known other if he does." *Id.* at 61. Therefore, regardless of the disclaimer, Drye had "property" or a "right to property" under state law that subjected his interest to the federal tax lien. *Id.*

Although defendants rely heavily on the case of *In re Costas*, 555 F.3d 790 (9th Cir. 2009), it actually supports the SBA's position and reinforces my decision that the California disclaimer statute does not apply to the FDCPA context. In *Costas*, the Ninth Circuit held that an Arizona disclaimer statute applied to preclude the operation of the Bankruptcy Code's fraudulent conveyance statute. 555 F.3d at 791. The court emphasized that the Bankruptcy Code did not define "property" or an "interest in property," instead leaving this determination to state law. *Id.* at 793. It distinguished *Drye* in several ways. First, the court found that the debt in *Drye* preceded the disclaimer, which would have "stripped the government of this interest." *Id.* at 796. In *Costas*, by contrast, the disclaimer preceded the petition for bankruptcy. *Id.* Second, *Drye* involved tax liens, which focus on collections and often "justif[y] the extraordinary priority accorded federal tax liens," while bankruptcy law "largely respects substantive state law rights." *Id.* at 796-97 (internal citations and quotations omitted). In addition, bankruptcy exemptions were far broader than those in the tax lien context. *Id.* at 797. The court found that extending *Drye* to

the bankruptcy context would undermine the goals of bankruptcy law:  treating property interests uniformly by state and federal courts, and reducing forum shopping and uncertainty.  *Id.*

This case is much more analogous to *Drye* than to *Costas*.  First, the FDCPA explicitly defines "property," and does so broadly.  28 U.S.C.A. § 3002(12).  In doing so, the FDCPA is far more akin to the tax lien statutes, which do not even expressly define "property," than to the Bankruptcy Code, which defers to state law.  As in *Drye*, the FDCPA also does not specifically provide an exemption for disclaimers.  *See* 28 U.S.C.A. § 3014.  Next, like the law governing tax liens, the focus of the FDCPA is on collections.  In fact, the purpose of the statute is "to create a comprehensive statutory framework for the collection of debts owed to the United States government [and to] improve the efficiency and speed in collecting those debts."  *United States v. Gianelli*, 543 F.3d 1178, 1183 (9th Cir. 2008) (internal citations and quotations omitted).  The Bankruptcy Code, by contrast, strives to treat property interests uniformly in state and federal courts.  *Butner v. United States*, 440 U.S. 48, 55 (1979).

Furthermore, the FDCPA expresses a clear Congressional intent that Bensal's "legally protected right to the property at issue" is not defeated by state disclaimer law.  *Drye*, 528 U.S. at 60.  In addition to providing for preemption, the FDCPA states that it "provides the exclusive civil procedures for the United States . . . to recover a judgment on a debt."  28 U.S.C.A. § 3001(a).  The legislative history of the FDCPA states that:

> [The FDCPA] would bring an end to the present situation whereby a crazy patchwork of laws in the 50 states dictate the debt collection remedies available to us in collecting Federal debts. It would provide consistent and fair creditors' rights to the Government regardless of the state of residence of the debtor and eliminate the preferences certain state laws presently confer on Federal debtors who just happen to live in states which are regarded as notorious 'debtors havens.'

H.R. REP. NO. 101-825 (1990).  In turn, the Code of Federal Regulations provides that federal law and the FDCPA apply to the SBA, and prohibits parties such as Bensal from "assert[ing] any local or state law to defeat the obligation incurred" in obtaining assistance from the SBA.  13 C.F.R. § 101.106.  All of these sources indicate that Congress clearly intended for federal law to preempt state law in situations such as this.  As in *Drye*, allowing disclaimer to prevent the SBA from collecting on its debt would strip the SBA of its interest and frustrate the purpose of the FDCPA.

*See Drye*, 528 U.S. at 59. Accordingly, I find that Bensal has a property interest in the trust share notwithstanding his disclaimer. Under the FDCPA, he transferred an interest in property in violation of 28 U.S.C.A. § 3304(a).[10]

**CONCLUSION**

The SBA's position that Bensal violated the fraudulent transfer provision of the FDCPA is not inconsistent with FB&T's position that Bensal violated its loan agreements, and the doctrines of judicial estoppel, res judicata, and collateral estoppel are inapplicable to this case. In addition, the default judgment constitutes a "debt" under 28 U.S.C.A. §§ 3304(a) and 3002(3). Because there is no dispute as to the remaining elements of the fraudulent transfer in 28 U.S.C.A. § 3304(a), the SBA is entitled to recovery under the FDCPA and I will GRANT the SBA's motion for summary judgment.[11]

The transfer of the trust share pursuant to Bensal's disclaimer is VOID. *See* 28 U.S.C.A. § 3306(a)(1). Defendants are ORDERED to transfer all property representing Bensal's trust share to the SBA in satisfaction of the portion of the default judgment relating to the second loan. 28 U.S.C.A. § 3306(a)(2). Defendants may not otherwise dispose of the trust share. I ENJOIN all of the defendants from selling, transferring, or otherwise conveying or assigning any property representing the trust share. A lien is imposed on all property representing Bensal's trust share pursuant to 28 U.S.C.A. § 3201.

---

[10] Because Bensal's trust share is "property" and thus an "asset," a disclaimer clearly falls within this broad definition of "transfer" in 28 U.S.C.A. § 3301(6).

[11] Defendants request judicial notice of three documents from the Superior Court case resulting in the Default Judgment. Dkt. No. 32. I do not rely on these documents, and they are not relevant to these motions. Accordingly defendants' request for judicial notice is DENIED as moot.

1   The SBA shall submit a proposed judgment to the defendants for agreement within five (5)
2   days of this order.  If the parties cannot agree upon the proposed judgment, they are directed to
3   submit competing proposals within ten (10) days of this order.
4   **IT IS SO ORDERED**.
5   Dated: October 31, 2014



WILLIAM H. ORRICK
United States District Judge